UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EWIZ EXPRESS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MA LABORATORIES, INC., et al.,<br><br>Defendants. | Case No. 15-CV-01213-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 14 |

Plaintiff eWiz Express Corp. ("Plaintiff") brings suit against Defendants Ma Laboratories, Inc. ("Ma Labs"), Abraham Ma ("Ma"), 120 Biiz, Inc. ("120 Biiz"), and SuperT2T, Inc. ("SuperT2T") (collectively, "Defendants") for violations of federal and state law. ECF No. 33, First Amended Complaint ("FAC"). Before the Court is Defendants' Motion to Dismiss. ECF No. 14 ("Mot.").

The Court finds this motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and hereby VACATES the motion hearing set for October 1, 2015 at 1:30 p.m. The initial case management conference scheduled for that time is CONTINUED to December 9, 2015, at 2:00 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' Motion to Dismiss with leave to

amend.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiff is a California corporation with its principal place of business in San Jose, California. FAC ¶ 1. Plaintiff, conducting business as "Superbiiz," sells computer and electronic components through the webpage www.superbiiz.com. *Id.* ¶¶ 1, 5. Plaintiff's sole shareholder and sole director is Ruiting "Christine" Rao.[1] *Id.* ¶ 9.

Ma Labs, a California corporation with its principal place of business in San Jose, California, is a distributor of computer parts, components, and other computer products. *Id.* ¶ 2. Ma is the founder, shareholder, director, and an officer of Ma Labs. *Id.* 120 Biiz and SuperT2T are California corporations incorporated by Ma. *Id.*

#### 2. Events Leading to Plaintiff's Lawsuit

In 2003, Plaintiff and Ma Labs allegedly entered into a joint venture agreement. *Id.* ¶ 7. Under the agreement, Ma Labs agreed to continuously provide computer products to Plaintiff for Plaintiff to resell online, for so long as both companies were in business. *Id.* Pursuant to the agreement, Plaintiff and Ma Labs shared office space, employees, administrative staff, officers, IT support, an inventory database, expenses, corporate counsel, accounts, and business information,

---

[1] Defendants suggest that Ma, not Rao, is the owner of Plaintiff and thus Rao does not have standing to file suit for Plaintiff. Mot. at 6 & nn. 1-2. To support this point, Defendants request judicial notice of two filings made in a marital dissolution proceeding between Rao and Ma that is pending in the California Superior Court for the County of Santa Clara. ECF No. 23. The filings seek court hearings regarding a transfer of Rao's shares in Plaintiff to Ma. *Id.* Ex. A-B. Plaintiff does not oppose Defendants' request for judicial notice. The Court GRANTS the request for judicial notice. *See* Fed. R. Evid. 201(b)(2); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (alteration in original)).

Although the judicially noticed filings indicate that Plaintiff's ownership is currently being disputed in Superior Court, this Court must accept as true the allegations in the complaint on a motion to dismiss. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiff's complaint alleges that Rao is the owner of Plaintiff. Moreover, the judicially noticed filings do not indicate that Rao lacks an ownership interest in Plaintiff.

2
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

among other items. *Id.*

Plaintiff did not pay Ma Labs for its computer products on an invoice-by-invoice basis. *Id.* ¶ 8. Instead, Plaintiff deposited revenues from its online sales into a bank account. *Id.* ¶ 7. Personnel from Ma Labs, including Ma, had access to this account. *Id.* Ma Labs's personnel would regularly direct bulk transfers of funds from Plaintiff's account to Ma Labs. *Id.* These transfers were credited against the amount Plaintiff owed to Ma Labs. *Id.*

Under the joint venture agreement, Ma Labs had the right to transfer a reasonable amount of funds over and above the amount owed by Plaintiff. *Id.* These funds, called "excess advances," were accounted for as loans or advances owed by Ma Labs to Plaintiff. *Id.* Excess advances totaled more than $4.8 million as of the date of the initial complaint and resulted in Plaintiff's effective prepayment against future orders for most, if not all, of the computer products transferred under the joint venture. *Id.* ¶¶ 7-8.

On February 19, 2013, Ma was appointed President and Secretary of Plaintiff. *Id.* ¶ 9. Rao continued to manage Plaintiff's daily operations. *Id.*

Plaintiff alleges that, sometime after August 2014, Ma and Ma Labs "undertook a deliberate campaign designed and intended to harm [Plaintiff] and to steal its business operations." *Id.* ¶ 10. On or around December 5, 2014, Ma incorporated 120 Biiz and registered the fictitious business name "Superbiiz.com" on 120 Biiz's behalf. *Id.* On or around that date, Ma locked Rao out of Plaintiff's offices; instructed Plaintiff's accounting staff to stop paying Rao; blocked Rao's access to Plaintiff's emails, customer orders, and business program; and harassed and intimidated Rao's assistants in an effort to prevent them from assisting Rao or Plaintiff. *Id.*

Plaintiff also alleges that, at some time, Ma falsely and fraudulently invoiced Plaintiff for $4.5 million in rent and other service charges that Plaintiff did not owe; caused millions of dollars to be transferred from Plaintiff to Ma Labs to pay the fraudulent invoices; physically grabbed checks payable to Plaintiff's vendors in an attempt to damage Plaintiff's credibility through nonpayment of vendor invoices; and refused to supply products to Plaintiff for orders that had already been placed by Plaintiff's customers. *Id.*

3
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Additionally, Plaintiff contends that Defendants stole Plaintiff's customers and vendors by redirecting purchase orders and invoices to Superbiiz.com. *Id.* On or about January 22, 2015, Ma sent an email instructing employees of Plaintiff and Ma Labs: "Effective immediately please issue Pos from SUPERBIZ.COM for special orders, and inform the vendors to issue related Market Fund to SUPERBIIZ.COM." *Id.*

The complaint alleges two versions of an event in March 2015. First, the complaint alleges that, after being terminated as Plaintiff's President and Secretary, Ma "directed that a Ma Labs employee access the [Plaintiff's] webpage from which it conducts all sales, and materially altered and deleted its content to falsely give the impression that [Plaintiff] no longer provided any products for sale." *Id.* Later, the complaint alleges it was Ma himself who accessed and made changes to Plaintiff's website. *Id.* ¶¶ 29-30. As a result of the modifications by Ma or the Ma Labs employee to Plaintiff's website, Plaintiff allegedly lost at least $150,000 per day. *Id.* ¶ 10.

Also in March 2015, Ma instructed a Ma Labs employee to put the Plaintiff's Ebay store into "vacation mode," which advises customers that they cannot purchase product. *Id.*

**B. Procedural History**

On March 16, 2015, Plaintiff filed its original complaint in federal court, asserting three federal and six state causes of action. ECF No. 1. On May 18, 2015, Defendants moved to dismiss the complaint. ECF No. 14. Plaintiff opposed the motion to dismiss on June 8, 2015. ECF No. 21 ("Opp."). Defendants replied on June 15, 2015. ECF No. 22 ("Reply"). Concurrent with the Reply, Defendants filed a request for judicial notice. ECF No. 23.

On August 26, 2015, the parties stipulated to allow Plaintiff to file the FAC, amending the name of Plaintiff's "doing business as" from "Superbiiz, Inc." to "Superbiiz." ECF No. 31. The FAC makes no substantive changes to the allegations or claims in the original complaint. *Id.* The Court granted the stipulation. ECF No. 32.

The FAC asserts three causes of action under the following federal statutes: (1) the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, (2) the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, 2707, and (3) the Lanham Act, 15 U.S.C. § 1125. The FAC also

asserts six state law claims: (1) breach of fiduciary duty by Ma Labs, (2) breach of fiduciary duty by Ma, (3) money had and received, (4) conversion, (5) violation of California Penal Code § 502, and (6) violation of the Unfair Competition Law, Cal. Bus. & Prof. § 17200 *et seq*. FAC ¶¶ 11-49. Plaintiff seeks restitution, compensatory and punitive damages, injunctive relief, costs, and attorney's fees. *Id.*

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Subject Matter Jurisdiction

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The party carries that burden by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.   Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

5

*Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### C.  Rule 9(b) Pleading Requirements

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.").  The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

### D.  Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130.  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Defendants argue that Plaintiff's federal claims should be dismissed for failure to state a claim and that the state law claims should then be dismissed for lack of subject matter jurisdiction.  Alternatively, Defendants argue that the state law claims also fail to state a claim.  Because supplemental jurisdiction over the state claims depends on the sufficiency of Plaintiff's federal claims, the Court addresses the federal claims first.

#### A. Federal Claims

##### 1. Violation of the CFAA

"The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)(1)-(7)).  Here, Plaintiff asserts that Plaintiff states a claim for relief under § 1030(a)(4) or (a)(5) of the CFAA.

To bring a § 1030(a)(4) claim, Plaintiff must allege that a defendant:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . . . .

18 U.S.C. § 1030(a)(4). In other words, Plaintiff must demonstrate that a defendant:

"(1) accessed a 'protected computer,' (2) without authorization or exceeding such authorization

that was granted, (3) 'knowingly and with 'intent to defraud,' and thereby (4) 'further[ed] the intended fraud and obtain[ed] anything of value,' causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value."[2] *Brekka*, 581 F.3d at 1132.

To bring a § 1030(a)(5) claim, Plaintiff must allege that a defendant:

(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a)(5). Plaintiff alleges a violation of all of these subsections, § 1030(a)(5)(A)-(C). These subsections require a defendant to either access or cause damage "without authorization" to a "protected computer."

Defendants contend that Plaintiff failed to plead a CFAA claim with specificity, arguing "unknown access at some unknown time to some unknown computer does not constitute a proper allegation of a violation of the CFAA." Mot. at 13. This Court first addresses the proper pleading standard and then turns to the sufficiency of the allegations.

### a. Pleading Standard

Defendants argue that the heightened pleading standard of Rule 9(b) applies to all violations of the CFAA. Plaintiff does not dispute that a heightened pleading standard should apply to Plaintiff's CFAA claims because the claims are based on fraud. Opp. at 7-8.

Although case law does not uniformly apply Rule 9(b) to all CFAA claims, there is case law supporting Rule 9(b)'s application to CFAA claims such as Plaintiff's, where a plaintiff alleges a course of fraudulent conduct as the basis of the claim. *See Kearns*, 567 F.3d at 1125

---

[2] Section 1030(g) creates a right of action for private persons injured by CFAA violations. Section 1030(g) provides that, for a private plaintiff to bring suit under the CFAA, a private plaintiff must prove that a CFAA violation involved one of five factors in § 1030(c)(4)(A)(i). 18 U.S.C. § 1030(g); *see Brekka*, 581 F.3d at 1131 (discussing an earlier version of the CFAA). One of the § 1030(c)(4)(A)(i) factors is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(a)(i)(I). Plaintiff's suit involves this factor: Plaintiff alleges Defendants' alterations to Plaintiff's webpage cost Plaintiff $150,000 per day. FAC ¶ 10.

8
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

(describing Rule 9(b)'s applicability to claims alleging a unified course of fraudulent conduct, even when fraud is not a necessary element of the claim); *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12–00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) (applying heightened pleading to CFAA claim alleging fraud).

Here, Plaintiff alleges that Defendants "undertook a scheme to steal Plaintiff's customers and business by forming competing companies having misleadingly similar business names and internet domains as are used by Plaintiff." Opp. at 7. Additionally, Plaintiff contends that "the object of Defendants' fraud was not simply to use Plaintiff's computer, but instead was to take down Plaintiff's web page and delete [sic] so that Plaintiff could not sell products, while simultaneously diverting Plaintiff's customer orders to Defendants." *Id.* at 8.

Accordingly, the Court applies Rule 9(b)'s heightened pleading standard to Plaintiff's CFAA claims. *Cf. Oracle Am., Inc.*, 2012 WL 6019580, at *6.

### b. Sufficiency of the Allegations

Defendants argue that Plaintiff failed to plead facts that could support an inference that they accessed a protected computer "without authorization" or by "exceeding authorized access," which is required by both of Plaintiff's asserted CFAA claims. *See* 18 U.S.C. § 1030(a)(4)-(5). In response, Plaintiff points to allegations that Plaintiff claims demonstrate both access and a lack of authority. Opp. at 8-9 (citing FAC ¶¶ 10h, 29).

In *Brekka*, the Ninth Circuit examined the meaning of "authorization" in the CFAA. The Ninth Circuit concluded that an individual acting "without authorization" acts "without any permission at all." *Brekka*, 581 F.3d at 1133. In other words, a person acting "without authority" has "no rights, limited or otherwise, to access the computer in question." *Id.* By contrast, an individual who "exceeds authorized access" is someone who "has permission to access the computer, but accesses information on the computer that the person is not entitled to access" *Id.*

After *Brekka*, the Ninth Circuit further addressed the scope of "authorization" under the CFAA in its en banc decision in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc). In *Nosal*, the Ninth Circuit explained that "exceeds authorized access" in the CFAA "is limited to

9
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

violations of restrictions on *access* to information, and not on restrictions on its *use*." 676 F.3d at 863-64.  For example, an employee with permission to access the information in a company database has not violated the CFAA if the employee misappropriates the information that the employee obtains from that database.  *See id.* at 864.

Therefore, for Plaintiff to plead that Defendants acted "without authority" or by "exceeding authorized access," Plaintiff must show that Defendants either accessed a protected computer without "any permission at all" to access that computer, or accessed a protected computer with permission but accessed information on that computer that Defendants were not entitled to access.  *See id.* at 863-64; *Brekka*, 581 F.3d at 1133.

In Plaintiff's factual allegations, Plaintiff alleges that Ma, after he was terminated as Plaintiff's President and Secretary, "directed that a Ma Labs employee access the [Plaintiff's] webpage from which it conducts all sales, and materially altered and deleted its content to falsely give the impression that [Plaintiff] no longer provided any products for sale." FAC ¶ 10h.  In Plaintiff's claim for relief, Plaintiff alleges that Ma accessed one or more computers or servers that hosted Plaintiff's webpage and, without authority and in excess of authority, "altered and deleted information to give the false and fraudulent impression that [Plaintiff] no longer conducted business or sold products." *Id.* ¶ 29.  Plaintiff further alleges Ma "knowingly accessed Superbiiz's computer and webpage causing the transmission of a command to delete information from the webpage and intentionally and/or recklessly caused damage and loss to Superbiiz." *Id.* ¶ 30.

Plaintiff's allegations do not sufficiently describe "the who, what, when, where, and how" of Defendants' alleged unauthorized access.[3]  *See Vess*, 317 F.3d at 1106 (noting that Plaintiff

---

[3] In the parties' briefs, neither Plaintiff nor Defendants separately address Plaintiff's claim under § 1030(a)(5)(A), which is the only asserted CFAA claim that does not focus on unauthorized "access[]" to a protected computer. *See* 18 U.S.C. § 1030(a)(4)-(5). Instead, § 1030(a)(5)(A) focuses on "caus[ing] damage without authorization" to a protected computer. 18 U.S.C. § 1030(a)(5)(A); *see also* § 1030(e)(8) (defining damage as "any impairment to the integrity or availability of data, a program, a system, or information"). The deficiencies in Plaintiff's allegations of unauthorized access, described below, apply equally to Plaintiff's claim of unauthorized damage.  For example, there is no allegation that Ma or the Ma Labs employee who may have caused "damage" to Plaintiff's website were unauthorized to do so. Additionally, there are no allegations of misconduct beyond a "formulaic recitation of the elements of the cause of

10
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

must describe "the who, what, when, where, and how of the misconduct charged). For example, the allegations of "who" acted "without authority" or by "exceeding authorized access" are unclear. The factual allegations indicate the alterations of Plaintiff's webpage occurred only one time, in March 2015. The complaint, however, separately describes the March 2015 event as carried out by an unnamed Ma Labs employee at Ma's direction, FAC ¶ 10h, and as done by Ma himself, *id.* ¶¶ 29-30. *See Swartz*, 476 F.3d at 756 (noting claims sounding in fraud must allege the identities of the parties to the misrepresentations). There are no allegations regarding the authority of the Ma Labs employee to access the computer or alter the webpage. Given that Ma Labs and Plaintiff share employees and office space, FAC ¶ 7, the Court cannot reasonably infer that all Ma Labs employees lack authorization to access Plaintiff's computers or webpage.

Plaintiff's brief does not explain the conflicting allegations about who accessed Plaintiff's webpage. Further, the complaint does not indicate where the computer that Ma or the Ma Labs employee allegedly accessed was located, leaving unclear the "where" of the alleged misconduct. Moreover, the allegations that someone "altered and deleted information on the webpage" and that Ma "knowingly accessed [Plaintiff's] computer and webpage causing the transmission of a command to delete information from the webpage and intentionally and/or recklessly caused damage and loss" are vague allegations that merely repeat the elements of a CFAA violation. *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 970 (9th Cir. 2008) ("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do[.]" (alteration in original) (quoting *Twombly*, 550 U.S. at 555)). Moreover, Plaintiff does not identify any information that was altered or deleted. *See Swartz*, 476 F.3d at 764 (noting that claims sounding in fraud must allege "an account of the . . . specific content of the false representations . . . ."). At a minimum, Plaintiff's allegations are insufficient to put Defendants on notice of who committed what misconduct, where, and how.

---

action." *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 970 (9th Cir. 2008).

Consequently, the Court finds that Plaintiff has failed to plead a violation of the CFAA. The Court GRANTS Defendants' motion to dismiss Plaintiff's CFAA claims. As Plaintiff could allege additional and more specific facts plausibly establishing that Defendants accessed a protected computer without authority or in excess of authority, the Court dismisses the claim with leave to amend. *See Lopez*, 203 F.3d at 1127.

### 2. Violation of the SCA

The Court turns to Plaintiff's second federal cause of action. Plaintiff claims Defendants violated § 2701(a) of the SCA, which imposes liability on whoever "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility," and by doing so "obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a); *see also id.* § 2701(c) (excepting conduct authorized by certain individuals or federal statutes).

In other words, to demonstrate an SCA violation Plaintiff must show: "(1) defendant intentionally accessed a facility through which an electronic communications service is provided; (2) such access was not authorized or intentionally exceeded any authorization . . .; (3) defendant thereby obtained, altered, or prevented authorized access to an electronic communication while it was in electronic storage in such system; and (4) the defendant's unauthorized access or access in excess of authorization caused actual harm to the plaintiff." *Sears v. Cnty. of Monterey*, No. C 11-01876 SBA, 2012 WL 368688, at *12 (N.D. Cal. Feb. 3, 2012).

Defendants raise two primary challenges to Plaintiff's SCA claim. First, Defendants contend that Plaintiff does not show whether "the information at issue in this dispute is the type of information covered under the SCA." Mot. at 15. Second, Defendants argue that Plaintiff fails to state sufficient facts to state a plausible claim for relief. Defendants claim that Plaintiff fails to allege any specific communications, describe the content of those communications, or explain any alterations to those communications. *Id.* Responding to both challenges, Plaintiff argues that Plaintiff's webpage is a "facility" that transmits and receives "electronic communications," and

12

that Defendants improperly accessed the webpage and altered and deleted the webpage's content. Opp. at 10. The Court addresses Defendants' arguments in turn.

Defendants first challenge the applicability of the SCA, arguing Plaintiff's complaint "does not have anything to do with communications." Mot. at 15. Neither side provides relevant authority as to what communications are covered under the SCA. Plaintiff cites only one case, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), in support of its contention that Plaintiff's webpage transmits and receives electronic communications covered by the SCA. However, *Konop* assumed, based on the parties' agreement, that a webpage was an "electronic communications service" and in "electronic storage." 302 F.3d at 879. In the instant case, the Court need not resolve this issue, because, as described below, Plaintiff's SCA claim's allegations are insufficient and thus fail to state a claim.

Like Plaintiff's CFAA claims, Plaintiff's SCA claim is based on the factual allegations of FAC ¶ 10h, which alleges that Ma directed a Ma Labs employee to access and make changes to Plaintiff's website. However, in the SCA claim for relief, Plaintiff alleges that Ma himself "obtained access to [Plaintiff's] webpage and deleted, altered, and prevented authorized access to electronic information stored on the webpage." FAC ¶ 35. Plaintiff's claim for relief further alleges that Plaintiff "was actually harmed in that its webpage was partially deleted and materially altered such that it gave the false and misleading information to [Plaintiff's] actual and potential customers regarding products offered for sale and advertising. *Id.*

As with Plaintiff's CFAA claims, Plaintiff's SCA claim is deficient. As discussed in the analysis of the CFAA claims, the complaint conflates or confuses the actions of Ma with a Ma Labs employee, without alleging the employee lacked authorization to access and alter Plaintiff's webpage. *Cf. Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029, 1051-52 (N.D. Iowa 2011) (granting motion to dismiss when plaintiffs failed to allege that defendants lacked the authorization of the electronic communication services provider to access the facility). Additionally, the complaint fails to identify a single specific electronic communications that was affected. Instead, Plaintiff refers vaguely to changes in the webpage and

merely provides a formulaic recitation of the elements of an SCA claim. *See Rick-Mik Enters., Inc.*, 532 F.3d at 970. Thus, Plaintiff has failed to plead a violation of the SCA. The Court GRANTS Defendants' motion to dismiss Plaintiff's SCA claim. As Plaintiff could allege additional facts plausibly establishing that Defendants violated the SCA, the Court dismisses the claim with leave to amend. *See Lopez*, 203 F.3d at 1127.

### 3. Violation of the Lanham Act

Plaintiff's third federal claim arises under the Lanham Act. The Lanham Act imposes liability on:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1). To establish a claim for trademark infringement or false designation of origin under § 1125(a)(1)(A), a plaintiff must prove that a defendant "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-04 (9th Cir. 2007)).

Plaintiff alleges that it owns the trade name "Superbiiz" and that, "[i]n connection with providing goods and services, Defendants used in commerce the words, terms and names, including 'Superbiiz.com' and 'SuperT2T' in order to falsely imply that the business, products and services are those of Plaintiff Superbiiz when in fact they are those of Defendants." FAC ¶¶ 42-43. Additionally, Plaintiff alleges: "Defendants' conduct is designed and likely to cause confusion, mistake and deceive the public and Plaintiff customers as to the affiliation, connection, or association of Defendants to goods, services, or commercial activities by Plaintiff." *Id.* ¶ 44.

14
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Defendants challenge the sufficiency of Plaintiff's allegations, arguing that Plaintiff "simply copies the language from a statute but [] provides no factual support." Mot. at 18. Plaintiff counters that it need not "set forth specific allegations or evidentiary facts" and that it alleged every element of a Lanham Act claim. Neither party cites authority explaining the meanings of the elements of a Lanham Act claim. The Court agrees with Defendants because Plaintiff provides a conclusory recitation of a Lanham Act claim.

For example, Plaintiff alleges that Defendants used "SuperT2T" and "Superbiiz.com" "in commerce" and "in connection with providing goods and services." Infringement claims are "subject to a commercial use requirement" because infringement law "prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Sanislaus Cnty.*, No. CV F 09–1988 LJO SMS, 2010 WL 843131, at *5 (E.D Cal. Mar. 10, 2010); *see also Readen LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 n.4 (9th Cir. 2012) ("[T]rademark and trade name claims are governed by the same general principles."). A mark is "in use in commerce" when either "it is placed in any manner on the goods or their containers or the displays associated therewith . . . [and] the goods are sold or transported in commerce" or "it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State . . . ." 15 U.S.C. § 1127.

Plaintiff has not sufficiently alleged that either "SuperT2T" or "Superbiiz.com" were "used in commerce." Although one defendant's incorporated name is "SuperT2T," there is no allegation that SuperT2T advertised, sold products or services, or conducted business. In fact, Plaintiff does not allege a single use of "SuperT2T" by any Defendant.

For "Superbiiz.com," there are no allegations that Defendants placed the name "Superbiiz.com" on any goods or display of goods, or used the name "Superbiiz.com" in the sale or advertising of services. Plaintiff does allege that Ma redirected purchase orders and invoices to "Superbiiz.com," and points to an internal email from Ma to Ma Labs's and Plaintiff's employees

15

Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1  directing "Pos" to "SUPERBIZ.COM" and "Market Fund" to "SUPERBIIZ.COM."  FAC ¶ 10d,

2  g.  However, neither "Pos" nor "Market Fund" are defined, and the allegation indicates that Ma

3  used the name "Superbiiz.com" internally, and not that Ma (or any other defendant) used the name

4  "Superbiiz.com" on any goods or in selling or advertising services.

5        Plaintiff's conclusory allegation that "SuperT2T" and "Superbiiz.com" were "used in

6  commerce" and "in connection with providing goods and services" is insufficient to allege

7  Defendants used "SuperT2T" or "Superbiiz.com" in violation of the Lanham Act.  *See Freecycle*

8  *Network, Inc.*, 505 F.3d at 903; *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, No. C 09-5939

9  PJH, 2010 WL 3619780, at *5 (N.D. Cal. Sept. 9, 2010) (dismissing complaint when the

10  complaint alleged "no facts showing that GoDaddy used the 'Petronas' mark in commerce to

11  mislead the public by placing Petronas' work forward as its own").

12        Defendants also suggest that the trade name "Superbiiz" is not protectable under the

13  Lanham Act.  Mot. at 17.  The Court notes that Plaintiff has made no effort to demonstrate that

14  "Superbiiz" is protectable.  *See Am. Ass'n of Naturopathic Physicians v. Am. Ass'n of*

15  *Naturopathic Physicians*, 15 F.3d 1082, *2 (9th Cir. 1994) (unpublished) ("To prevail in a 15

16  U.S.C. § 1125(a) action for trade name infringement plaintiff must prove it owns a distinctive

17  name . . . ." (citing *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1198-1201 (9th Cir.

18  1979)); *see also In't'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993)

19  (explaining distinctiveness); *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872-

20  73 (9th Cir. 2002) (describing categories of protectable marks).

21        The only case Plaintiff relies on to support its Lanham Act claim, *Sigma Dynamics, Inc. v.*

22  *E.Piphany, Inc.*, No. C 04-0569MJJ, 2004 WL 2533220, at *4 (N.D. Cal. Nov. 8, 2004), holds that

23  a heightened pleading standard is not necessarily required for false advertising claims under the

24  Lanham Act.  Here, Defendants do not argue a heightened pleading standard should be used for

25  Plaintiff's Lanham Act claim.  Plaintiff need only meet the pleading requirements of Rule 8(a).

26  However, as described above, Plaintiff fails to do so because Plaintiff failed to plead at least one

27  element of a Lanham Act claim: that a defendant "used in commerce" a name that is likely to lead

28

16
Case No. 15-CV-01213-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

to confusion. *See Luxul Tech. Inc.*, 78 F. Supp. 3d at 1170 (listing elements of Lanham Act claim).

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss Plaintiff's Lanham Act claim. As Plaintiff could allege additional facts plausibly establishing that Defendants used a word or name in commerce that is likely to cause confusion, the Court dismisses the claim with leave to amend. *See Lopez*, 203 F.3d at 1127.

### B. State Law Claims

Because the parties are all California individuals or corporations, *see* FAC ¶¶ 1-2, there is no diversity jurisdiction. *See Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam) (noting diversity of citizenship under 18 U.S.C. § 1332 requires complete diversity between the parties). Thus, Plaintiff's CFAA, SCA, and Lanham Act claims provide the sole basis for federal subject matter jurisdiction. Because these causes of action are dismissed, the Court lacks jurisdiction to consider Plaintiff's state law claims. *See id.* The Court GRANTS Defendants' motion to dismiss Plaintiff's state law claims without prejudice. Should Plaintiff file an amended complaint curing the deficiencies identified in the federal claims, Plaintiff may reassert the FAC's state law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss with leave to amend on grounds that Plaintiff has failed to allege a federal cause of action.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's claims. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: September 28, 2015

_____
LUCY H. KOH
United States District Judge